## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**EDDIE WILSON,**
      **Petitioner,**

**v.**                           **Case No.  4:07cv535/SPM/MD**

**WALTER A. MCNEIL,**
      **Respondent.**

_____

### REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 11).  Petitioner has filed a reply.  (Doc. 14).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

      On August 16, 2004 petitioner was charged by information filed in the Circuit Court of Leon County, Florida, case number 04-2516, with one count of Burglary of a Dwelling (a second-degree felony), and one count of Felony Theft (a third-degree

felony). (Doc. 11, Ex. B, p. 1).[1]  The offenses were alleged to have occurred between
July 10, 2004 and July 13, 2004.  (*Id.*).  The probable cause affidavit dated July 13,
2004 described the incident as follows:

> I [Deputy Chaires] responded to 7502 Ranger Rd. and made
> contact with Terry Miller [the victim].  Investigation revealed that Mr.
> Miller had secured his residence around 1130 hours on 07-10-04.  Upon
> returning around 1615 hours this date [July 13, 2004], Mr. Miller had
> found his back door had been forced open.  Mr. Miller went to his aunt's
> house at 7508 Range[r] Rd. to call this agency.  No one was home and
> his aunt has given him permission to enter the residence anytime.
> Upon entering the residence he walked around while talking on the
> phone.  Mr. Miller noticed his toaster (Item #1) on the floor in Eddie
> Wilson's bedroom.  He then noticed his phone (Item #3) on the bed and
> the fan (Item #2) at the foot of the bed.  Mr. Miller also noticed a rifle
> behind the door.  He knows his aunt does not have any guns and that
> Eddie Wilson is a convicted felon.  Mr. Miller left the items where he
> saw them until my arrival.  Upon checking Mr. Miller's residence for
> evidence, he showed me the location [of] the items that were taken.
> The three items were seized as evidence and later placed in an
> evidence locker.  A check with NCIC/FCIC revealed the rifle was not
> stolen.  Digital photos were taken of the scene and the seized evidence.
>  Latent evidence (1 card) was lifted from the back door knob and later
> placed in the evidence locker.  Mr. Miller completed a sworn affidavit.
> Eddie Wilson's location was unknown at the time of this report.

(Ex. B, p. 4).  The State filed a notice of intent to seek an enhanced penalty under the
Prison Releasee Reoffender Punishment Act.  (Ex. A, p. 5 in ECF).

On November 18, 2004 petitioner entered a counseled no contest plea to both
charges.  (Ex. B, p. 21).[2]  In exchange for his plea, the State waived a prison releasee
reoffender sentence and recommended that petitioner be sentenced to 128 days
incarceration with 128 days credit for time served (thereby serving no additional jail
time), and 60 months probation terminable after 30 months if he was in full

---

[1]Hereafter all references to exhibits will be to those provided at Doc. 11 unless otherwise
noted.

[2]References to page numbers in Exhibit B are to those appearing in the lower right-hand
corner.

compliance.  (*Id.*, pp. 21, 25-34).  In the standard plea and acknowledgment of rights form pursuant to which petitioner entered his plea, he swore or affirmed:  that he understood the nature of the charges and the maximum and minimum penalties; that his attorney had informed him of the facts the State would have to prove before he could be found guilty and had discussed with him any possible defenses that could be raised in his case; that he was satisfied with his attorney's advise; that he understood his attorney would conduct no further investigation of the facts of his case; and that he understood the rights he was waiving by entering the plea, including his right to appeal except with respect to an illegal sentence and the judge's authority to hear the case.  (*Id.*, pp. 21-22).  Petitioner also swore or affirmed that he was entering his plea because he believed it was in his best interest to do so; that he had asked his attorney all the questions he had about his case and the plea, and had received complete and satisfactory answers to each of them.  (*Id.*, p. 22).  As to probation provision, petitioner swore or affirmed his understanding that if he violated the terms of community supervision, and the violation was found to be willful and substantial, he later may be sentenced to the maximum penalty permitted by law as indicated on the reverse of the plea and rights form (15 years for the Burglary of a Dwelling and 5 years for the Felony Theft).  (*Id.*, p. 21).

On November 18, 2004 the court accepted petitioner's plea, adjudicated him guilty and sentenced him to 128 days incarceration with 128 days credit for time served, and 60 months probation.  (*Id.*, pp. 25-39).  Petitioner did not move to withdraw his plea or directly appeal his conviction or sentence.

On January 3, 2005, the Florida Department of Corrections ("DOC") filed an affidavit of violation based on petitioner's failure to report to his probation officer. (Ex. B, p. 43).  Petitioner admitted the violation (*id.*, pp. 51-52), and on March 3, 2005 the trial court re-instituted probation.  (*Id.*, pp. 53-61, 64).

On May 5, 2005, the DOC filed another affidavit of violation, again based on petitioner's failure to report to his probation officer.  (Ex. B, p. 73).  On July 28, 2005

petitioner admitted the violation.  (Ex. B, pp. 82-83; Ex. C, pp. 7-11).  At the violation of probation sentencing, the victim of the original burglary, Mr. Terry Miller, stated that he thought plaintiff would benefit more from not going to prison.  (Ex. D, pp. 7-8).  Petitioner's attorney requested that probation be reinstated, arguing that there were no new law violations, just "trouble reporting."  (*Id.*, p. 9).  Petitioner told the trial court that he was "trying to change [his] life."  (*Id.*, pp. 11-12).  The State informed the court that petitioner had 33 criminal convictions, including 22 felonies, dating back to 1987, as well as three prior probation violations and a failure to appear.  (*Id.*, p. 14).  The State reminded the trial court that it waived prison releasee reoffender sentences based on the victim's wishes and gave petitioner "a huge break," which he "didn't take."  The State requested a ten-year sentence.  (*Id.*, pp. 15-16).

When the trial court stated that its initial reaction was that petitioner never should have been on probation in the first place, petitioner interjected:

> Well actually I wanted to take the case to trial, but my attorney told me that he don't get paid enough money to go to trial.  That was Alex Morris which he came here on the 28th and told you that he wanted to withdraw from me because the State doesn't pay him enough money to take cases to trial.

(*Id.*, p. 19).  The trial court pointed out that that was the purpose of the plea and acknowledgment of rights form, indicated that petitioner was not a candidate for probation, and that his conduct indicated a prison sentence was appropriate because any mitigation was outweighed by his criminal history and the danger he presented to the community.  (*Id.*, pp. 19-20).

Although petitioner was subject to a minimum sentence of 85.05 months and a maximum of fifteen years imprisonment as a result of the violation (Ex. B, pp. 84-86), the trial court terminated petitioner's probation, adjudicated him guilty, and sentenced him to only 85 months, a slight downward departure.  (Ex. B, pp. 88-95; Ex. D, pp. 21-22).  Petitioner filed a notice of appeal.  (Ex. B, p. 98).  On November 22, 2005, he filed a motion for voluntary dismissal, which was granted on December 20,

2005 when the Florida First District Court of Appeal ("First DCA") dismissed petitioner's appeal pursuant to his motion.  (Doc. 1, p. 2; Doc. 11, Ex. G).

On August 9, 2006, petitioner filed a motion for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure.  (Ex. H, pp. 1-23).  The motion was denied without a hearing on February 8, 2007.  (*Id.*, pp. 24-60).  On June 28, 2007, the First DCA affirmed the denial order without written opinion.  *Wilson v. State*, 959 So.2d 724 (Fla. 1st DCA 2007) (Table) (copy at Ex. L).  The mandate issued on July 26, 2007.  (Ex. M).

Petitioner filed his federal habeas corpus petition on September 22, 2007 (Doc. 1, p. 1).  Respondent concedes the petition is timely.  (Doc. 11, pp. 7-9).


## LEGAL STANDARDS

### Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>           **(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C.A. § 2254 (2008).**

**The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:**

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

***Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme**

---

[3]**Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.**

Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, **538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."**  *Neeley v. Nagle*, **138 F.3d 917, 923 (11ᵗʰ Cir. 1998),** *overruled on other grounds by Parker v. Head*, **244 F.3d 813, 835 (11ᵗʰ Cir. 2001).**

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, **538 U.S. at 73 (quoting** *Williams*, **529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."**  *Early v. Packer*, **537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting** *Williams*, **529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.**

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, **529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.**  *Holland v. Jackson*, **542 U.S. 649, 652, 124**

S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).   An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."   *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).   The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."   *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."   *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear

and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

**Exhaustion and Procedural Default**

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

This court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance

of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*


## DISCUSSION

Petitioner's habeas petition presents three grounds for relief, all challenging the constitutionality of his plea on the grounds that it was obtained in violation of his right to the effective assistance of counsel.

A.     Clearly Established Federal Law

When a prisoner contends that ineffective assistance of counsel led him to enter an improvident guilty or no contest plea, courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).  Under *Strickland*, in order to prevail upon a claim of ineffective assistance of counsel the petitioner must prove that:   (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052.  The court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. In evaluating counsel's performance, a court's review is objective, in that the court considers "whether there was any reasonable justification for the attorney's conduct." *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) (citing *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 4667 U.S. at 689, 104 S.Ct. at 2065. Indeed, the Supreme Court has warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 769-70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970). Therefore, to succeed on an ineffective assistance claim, petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 690, and he must establish "that that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  As the Court further explained in *Hill*:

> In the context of guilty pleas, . . . [t]he second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59.  Of particular relevance to the present case, the *Hill* court further explained:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.  *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

*Hill*, 474 U.S. at 59, 106 S.Ct. at 370-371.

B.     Review of Petitioner's Claims

The claims as set forth in the petition are as follows:

Ground 1.     <u>Petitioner's plea is involuntary because trial counsel "fail[ed] to investigate material facts and advise defendant of possible defense."</u>  (Doc. 1, pp. 4, 4.1-4.2).

**Ground 2.**   **Trial counsel was ineffective, and petitioner was deprived of his protection against unreasonable searches and seizures, because his trial counsel did not file a motion to suppress.** (Doc. 1, pp. 4, 4.3-4.5).

**Ground 3.**   **Trial counsel was ineffective for failing to investigate or contact alibi witnesses.**  (Doc. 1, pp. 5, 5.1-5.3).

Petitioner's first claim is subsumed within his second and third claims. Essentially, petitioner contends counsel was ineffective for: (1) failing to investigate and move to suppress evidence (stolen items) seized during a warrantless search of the residence in which petitioner was staying, and (2) failing to investigate and develop an alibi defense based on petitioner's employer and co-worker. Petitioner contends counsel's lack of preparation in this regard led him to feel that he had no choice but to accept the plea agreement.

Petitioner presented the same basic claims to the state trial court in his Rule 3.850 motion, although he embellished them with additional supporting facts in the state appellate court, and has embellished them further here. Respondent urges the court to find petitioner's embellished claims procedurally barred, because facts not presented to the state court cannot be considered by this court. Respondent is correct.[5] Therefore, this court has considered only those facts that were presented to the state courts.[6]

---

[5]Habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992). Where a petitioner raises an ineffective assistance of counsel claim in the state court, but alleges different supporting facts than in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court. *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Secretary*, 377 F.3d 1317, 1344 (11th Cir. 2004).

[6]For example, in state court it was undisputed that the stolen items were found in a residence owned by the victim's aunt Ms. Wilson. Petitioner did not allege that it was his own residence. In his petition in this court, petitioner now refers to the residence as his own. Another example is that petitioner now claims that in addition to his alibi defense, he had a viable defense that the victim himself had placed the items in petitioner's bedroom in retribution for a dispute between the victim

The factual support for petitioner's claims was drawn largely from information argued in a Motion to Reduce Bond or for Pretrial Release on Non-Monetary Conditions, which was filed by petitioner's original counsel (Leonard Holton) prior to entry of petitioner's plea.  Mr. Holton was later replaced by conflict-free counsel Robert Morris, who counseled petitioner thereafter.

In the Motion to Reduce Bond, counsel Holton argued that petitioner lacked the motivation to flee, and in fact had a strong motivation to stay in Tallahassee and contest the charges, because of the following alleged weaknesses in the State's case:

> In this cause the alleged victim claims that a burglary occurred between 11:30 and 16:15 on July 13, 2004.  The defendant's employer and a co-worker are willing to testify that the defendant was working with them, and was in their company the entire time, from 8:00 am to 6:00 pm on that date.  Further, the alleged victim told police his aunt, Terry [sic] Wilson, had given him permission to enter the house where the alleged victim claims to have found the items alleged to have been stolen "at any time."  Ms. Wilson adamantly denies having given the alleged victim such permission and contends that the victim's statement to that effect to police was a lie.

(Ex. B, pp. 12-13).

The Rule 3.850 court identified *Strickland* as the controlling legal standard, and denied relief on all claims making the following relevant factual findings and conclusions:

1.  It was "highly unlikely" petitioner would have proceeded to trial in light of the fact that the sentence scoresheet indicated he was facing a possible 20-year sentence (if he was sentenced consecutively), yet only received 128 days time served followed by probation, and the fact that the State waived the enhanced prison releasee reoffender sentence as a condition of the plea agreement.

2.  Petitioner did not claim his plea was coerced at the time he entered his plea or immediately thereafter; rather, he claimed his

and petitioner.  That potential defense was never mentioned in state court.  These are just a few examples of petitioner's embellishments that will not be considered.

plea was coerced only after he was sentenced to a prison term for his second violation of probation.

3. Petitioner's ineffective assistance claim based on counsel's failure to file a motion to suppress was procedurally barred because petitioner was impermissibly attempting to raise a Fourth Amendment claim (which was precluded by his plea) under the guise of an ineffective assistance claim.  Further, petitioner's ineffective assistance claim itself was procedurally barred because it should have been raised on direct appeal.

4. Counsel was not deficient for failing to investigate and depose alibi witnesses listed in the Motion to Reduce Bond or For Pretrial Release on Non-Monetary Conditions, because petitioners' plea excused his attorney from any further investigatory duties, and because petitioner had provided no names, addresses, or content of the expected testimony of the alibi witnesses.

(Ex. H, pp. 25-27).  This court will first address petitioner's contention that counsel was ineffective for failing to file a motion to suppress.[7]

---

[7]To the extent petitioner attempts to raise a free standing Fourth Amendment claim that evidence was obtained from an illegal search and seizure, he has offered no valid grounds for federal habeas relief.  Petitioner was not convicted upon illegally obtained evidence.  He did not have a trial, but rather pleaded no contest to the charges against him.  Such a plea constitutes a break in the chain of events that has preceded it in the criminal process.  *Tollett v. Henderson*, 411 U.S. 258 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  In *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1988), the Supreme Court explained why it is that an antecedent constitutional defect such as a challenge to the admissibility of evidence cannot later be reviewed on federal habeas corpus when the state defendant has been convicted upon a valid guilty or no contest plea:

> [W]hen a defendant is convicted pursuant to his plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.  State law treats a guilty plea as "a break in the chain of events [that] preceded it in the criminal process."  Therefore, the conclusion that a Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction.

*Id.*, 462 U.S. at 320-21, 103 S.Ct. at 2377 (dictum) (quoting *Tollett v. Henderson*, 411 U.S. at 267, 93 S.Ct. at 1608).  Petitioner is in prison based upon his pleading no contest, not upon a conviction at trial through the use of illegally obtained evidence.  As such, his Fourth Amendment claim is without merit and should be denied.

<u>**Failure to File Motion to Suppress**</u>

This claim is grounded on petitioner's contention that the stolen items retrieved from the residence in which he was staying were seized without a search warrant and without the owner's permission to enter or search the residence. (Ex. H, pp. 9-11; Docs. 1, 14). According to petitioner, had counsel filed a motion to suppress, there is a reasonable probability it would have been granted and the charges dismissed or, if not dismissed, that the State would have been unable to prove its case at trial.

The state court found petitioner's ineffective assistance claim procedurally barred because it should have been raised on direct appeal. As the following discussion demonstrates, regardless of whether this procedural bar was adequate to support the judgment, federal habeas relief should be denied because the claim is without merit.

In order to prevail on his claim, petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability the result of the proceeding would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986); *Zakrsewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006). To establish a Fourth Amendment violation the complaining party must prove: (1) "that the search or seizure was illegal," and (2) "that it violated his reasonable expectation of privacy in the item or place at issue." *Kimmelman*, 477 U.S. at 375, 106 S.Ct. at 2582. With regard to the second element, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *Rakas v. Illinois*, 439 U.S. 128, 143-44, n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir. 2002). Status as an overnight guest may entitle an individual to the expectation of privacy. *See Minnesota v. Olson*, 495 U.S. 91, 98-99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (holding an overnight guest has a legitimate expectation of privacy in his host's home).

The basis of petitioner's argument is that the victim did not have Ms. Wilson's permission to enter the residence and was without authority to authorize law enforcement to enter and search the residence.  But even assuming to petitioner's benefit that sufficient facts existed for counsel to argue that petitioner had a reasonable expectation of privacy in the bedroom or the rest of Ms. Wilson's home, he still has not established a reasonable probability that a motion to suppress would have changed the outcome of the proceeding.

First, petitioner's allegations fail to demonstrate that the officer was objectively unreasonable in her belief that the victim had the authority to consent to entry and search of Ms. Wilson's home.  It is well settled that consent to search may be provided by a third party who possesses common authority over the premises. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). "'Common authority' rests 'on mutual use of the property by persons generally having joint access or control for most purposes.'"  *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) (citation omitted).  Even if the consenting party does not, in fact, have the requisite relationship to the premises, there is no Fourth Amendment violation "if an officer has an objectively reasonable, though mistaken, good-faith belief that the consent he has obtained [is a] valid consent to search the area."  *United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997) (citing *Rodriguez*, 497 U.S. at 186, 110 S.Ct. at 2800).  The relevant inquiry is whether "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez* at 188; 110 S.Ct. at 2801 (citation and internal quotation marks omitted).

The facts available to Deputy Chaires at the time of the search and seizure are set forth in the probable cause affidavit.  Deputy Chaires reported that when the victim called the sheriff's department, he reported that he was calling from Ms. Wilson's home; that Ms. Wilson was his aunt and although she was not home she had given him permission to enter her home "anytime;" and that while on the telephone the victim began walking around and discovered the stolen items in

petitioner's bedroom.  Based on this information, it is likely that Deputy Chaires would be found to have reasonably believed she had obtained a valid consent.  *See, e.g., United States v. Almeida-Perez*, 549 F.3d 1162 (8th Cir. 2008) (holding that police reasonably relied on defendant's cousin's apparent authority to admit them into defendant's house, and thus, the warrantless entry by the police did not violate the Fourth Amendment; defendant's cousin had been seen going into and out of the house without knocking, he was reposing on the front porch, he invited the officers in without asking anyone's leave, and he preceded them in without knocking).

But even more significant is the fact that had a motion to suppress been granted, it is still highly unlikely the outcome of the proceeding would have been different.  A successful motion to suppress would have led only to the suppression of the <u>physical</u> evidence (the stolen items) seized by the officer.  It would have had no effect on the <u>testimonial</u> evidence of the victim that he observed the stolen items in petitioner's bedroom prior to the presence of, and without direction from, law enforcement.  *See United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (holding that the Fourth Amendment's protection proscribes only governmental action; "it is wholly inapplicable to a search . . . , even an unreasonable one, effected by a private individual not acting as an agent of the Government or with participation or knowledge of any governmental official"); *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980).  Thus, even if counsel had been successful in suppressing the toaster, phone and fan, the fact remains that the State most likely would have proceeded against petitioner based on the victim's testimony.  In light of this evidence, the fact that petitioner had no viable defense (as discussed below), and the fact that petitioner was facing a 20-year sentence if he was convicted, it is highly unlikely petitioner would have forgone a generous plea bargain and gone to trial, or that if he had done so he either would have been acquitted or, if convicted, received a shorter sentence than time served with probation.

In sum, this ground of ineffective assistance must fail because petitioner has not established a reasonable probability that a motion to suppress would have

changed counsel's recommendation as to the plea or petitioner's decision to take the plea.  Nor has petitioner established a reasonable probability that had he gone to trial he would have been acquitted or, if convicted, received a shorter sentence than he actually received.  Petitioner is not entitled to federal habeas relief on this claim.

<u>Failure to Investigate and Develop Alibi Defense</u>

Petitioner's alibi defense claim is grounded on his contention that his boss and co-worker would have testified that petitioner was with them for most of the day on July 13, 2004.  (Ex. H, pp. 11-12; Docs. 1, 14).  The state court rejected this claim, as set forth above.  A factor which the state court did not discuss, and which is fatal to petitioner's claim, is that even assuming to petitioner's benefit that his boss and co-worker would have testified that he was in their company from 8:00 a.m. to 6:00 p.m. on July 13, 2004, there is no reasonable probability an alibi defense would have succeeded at trial because that accounted for only a portion of the relevant time period.  The charging information asserted that the burglary occurred some time <u>between July 10, 2004 and July 13, 2004</u>.  (Ex. B, p. 1; *see also* Ex. B, p. 23).  It was based on the victim's statement that he had secured his residence on July 10, 2004 "around 1130 hours" (11:30 a.m.) and returned on July 13, 2004 "around 1615 hours" (4:15 p.m.), at which time he discovered his back door had been broken into and certain items stolen.  (Ex. B, pp. 1, 4).  Petitioner does not allege that he informed counsel of anyone who could vouch for his whereabouts from 11:30 a.m. on July 10, 2004 until 8:00 a.m. on July 13, 2004.  Thus, he has not established that counsel was deficient or that his  purported alibi defense would likely have succeeded at trial.  The state court's denial of relief on this claim was neither contrary to, nor unreasonable application of, clearly established Federal law.

<u>Coercion</u>

This brings the court to petitioner's overall contention that counsel's lack of preparation forced him to accept the plea.  As the foregoing discussion demonstrates however, had counsel "prepared" in the manner petitioner now says he should have (by filing a motion to suppress and investigating petitioner's alibi

witnesses for July 13, 2004), there is not a reasonable probability the result of the proceeding would have been different.

Furthermore, the record conclusively rebuts petitioner's contention that he was coerced.  When petitioner executed the plea form he swore or affirmed that he was entering his plea voluntarily and of his own free will; that he was entering his plea because he believed it was in his best interest to do so; that he had asked his attorney all of the questions he had about his case and the plea, and had received complete and satisfactory answers to each of them; and that he was satisfied with his attorney's advice. (Ex. B, pp. 21-22).  Petitioner entered a plea to <u>128 days time served with 60 months probation terminable in 30 months)</u> for a second-degree felony and a third-degree felony where, as a prison releasee reoffender he was facing a mandatory fifteen-year sentence on the first charge and a five-year sentence on the second charge.  *See* Fla. Stat. 775.082(9)(a) (2004).  Petitioner did not challenge his plea or complain of his attorney's representation immediately following the plea or upon his first violation of community supervision.  It was only after his second violation which resulted in prison time that he decided he had been "coerced."  Petitioner's conclusory and self-serving allegations are belied by his own sworn assertions in the record.  The state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of, clearly established Federal law.

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the convictions and sentences in *State of Florida v. Eddie Wilson*, in the Circuit Court of Leon County, Florida, case number 04-2516, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 28th day of January, 2009.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**